IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| MARY J. BROOKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04-1299-T/An |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

---

### ORDER AFFIRMING COMMISSIONER'S DECISION

---

Plaintiff, Mary J. Brooks, filed this action to obtain judicial review of the Defendant Commissioner's final decision denying her applications for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 410 *et seq*, and for supplemental security income (SSI) benefits under Title XVI of the Act, 42 U.S.C. § 1381 *et seq*. Plaintiff's applications were filed on November 17, 2000, and were denied both initially and upon reconsideration by the Social Security Administration (SSA). Plaintiff requested a hearing before an administrative law judge (ALJ) which was held on July 30, 2002. The ALJ issued a decision on September 26, 2002, determining that plaintiff was not disabled as defined by the Act and Social Security Regulations. On February 25, 2003, the Appeals Council granted plaintiff's

1

request for review and remanded the case to the ALJ for a new hearing.[1] The ALJ conducted a supplemental hearing on March 8, 2004 and again issued an unfavorable decision on July 12, 2004. Thus, the ALJ's decision became the final decision of the Commissioner of Social Security. Plaintiff then filed this action asking the court to reverse and remand the ALJ's decision on several grounds: the decision denying plaintiff disability benefits is not supported by substantial evidence, the ALJ failed to properly follow the remand order from the Appeals Council, the ALJ failed to demonstrate specific jobs the plaintiff is capable of performing, and the ALJ improperly discredited certain pieces of medical evidence. The Commissioner contends that the ALJ's decision is supported by substantial evidence and that the ALJ properly followed the remand order, is not required to outline specific jobs the plaintiff can perform, and properly discredited the medical evidence at issue. For the reasons set forth below, the Commissioner's decision is AFFIRMED.

## Standard of Review

Judicial review in this court is limited to determining whether or not there is substantial evidence in the record as a whole to support the Commissioner's decision, and whether the correct legal standards were applied. See 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999); Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir.

---

[1] The Appeals Council remanded the case because the first hearing decision did not contain an adequate evaluation of medical reports concerning plaintiff's nonexertional physical and mental limitations. (R.55-56).

2

1997); Drummond v. Comm'r of Soc. Sec., 126 F.3d 837, 840 (6th Cir. 1997); Cutlip v. Sec'y of Health and Human Serv., 25 F.3d 284, 286 (6th Cir. 1994). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion. Perales, 402 U.S. at 401; Her, 203 F.3d at 389; Drummond, 126 F.3d at 840; Cutlip, 25 F.3d at 286. The reviewing court may not resolve conflicts in the evidence nor decide questions of credibility. Walters, 127 F.3d at 528 (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)); Cutlip, 25 F.3d at 286. In addition, if the decision is supported by substantial evidence, it should not be reversed even if substantial evidence also supports the opposite conclusion. Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997); Smith v. Chater, 99 F.3d 780, 782 (6th Cir. 1996) (citing Cutlip, 25 F.3d at 286).

## Background of the Case

Plaintiff is a forty-two year old female with an education including high school and some college. (R.356). At the time of the hearing, she was forty years old and alleged disability since May 15, 2000, due to back problems and depression. (R.103, 106, 119). She worked as an industrial technician for Proctor & Gamble from October 1996 to May 15, 2000, her alleged onset date of disability. (R.143, 357, 368). Plaintiff also worked as a tile maker for American Olean Tile from 1984 to 1996. (R.143, 368).

Plaintiff's physical problems allegedly began following a car accident in December 1998.[2] (R.226). Six months later, she began seeing Dr. Fereidoon Parsioon for

---

[2] There is some discrepancy as to the date of the accident. Dr. Donita Keown reported a date of 1999 and Dr. Rose Payne a date of 1992. (R.68, 236). These appear to be typographical errors, as other medical records

posterior cervical pain and low back pain. (R.226). In July 1999, Dr. Parsioon performed an anterior cervical diskectomy in an attempt to relieve plaintiff's neck pain. (R.207-10). As of October 1999, plaintiff was doing well and the bones in her neck had fused perfectly since the procedure. (R.190). In November 1999, Dr. Parsioon observed that plaintiff "doesn't have much problem" other than her continued complaints of low back pain. (R.179). She was given Celebrex for her pain and was limited to lifting no more than twenty-five pounds. (R.179). Dr. Parsioon's further observations were that her back was normal and she could walk, stand, bend, and twist, with some limitation in bending and stretching her neck and shoulders. (179-80). A cervical spine x-ray performed by Dr. Parsioon in February 2000 showed that plaintiff's bone graft had "excellently and solidly fused" and revealed no abnormalities. (R.175). As a result, plaintiff was told that "she can basically do whatever she pleases without any limitation." (R.175).

In November 1999, plaintiff also began visiting Dr. Stephen Goodwin. (R.263). In November, he restricted her to lifting and pulling no more than twenty-five pounds, repeating this counsel in a February 2000 visit. (R.263-64). Throughout her visits with Dr. Goodwin, plaintiff had persistent lumbar tenderness and limited flexion at the waist. (R.263-66). In April 2000, Dr. Goodwin prescribed the plaintiff Paxil for depression, possibly the result of her husband's infidelity. (R.267, 270).

---

consistently note December 1998 as the date of the accident. (R.94, 226, 283).

In January 2001, Plaintiff visited Dr. Rose Payne for a consultative examination. (R.236). The physical examination demonstrated that plaintiff got out of her chair and onto the examining table without difficulty. (R.238). She was able to lift more than ten pounds in each hand, had a normal ability to grasp and manipulate objects, and had a normal gait. (R.238). Plaintiff's range of motion was normal for all joints and her straight-leg raise test was negative. (R.240-41). Dr. Payne diagnosed plaintiff with back pain and concluded that she had no impairment-related physical limitations. (R.242).

A month after visiting Dr. Payne, plaintiff had the first of two very similar physical residual functional capacity assessments performed by state agency examiners. (R.243). The assessment reported that she can lift twenty pounds occasionally, ten pounds frequently, and that she can stand, walk, or sit six out of eight hours. (R.244). Plaintiff was also limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (R.245). She had no other limitations. (R.243-50).

In April 2001, plaintiff had a consultative examination with Dr. Stanley Hopp. (R.252). His report described mild tenderness in plainitiff's lumbosacral region and an x-ray of her back revealed slight scoliosis convex right. (R.252). Dr. Hopp also noted that plaintiff ambulated with a smooth gait. (R.252). His impression was that plaintiff had mechanical low back pain syndrome without radiculopathy. (R.253). He suggested she continue conservative measures to relieve the pain, including not lifting more than

fifteen pounds, only occasionally bending, and alternating between sitting and standing. (R.253).

Plaintiff underwent the second physical residual functional capacity assessment in May 2001. (R.274). The state agency examiner found plaintiff capable of lifting twenty pounds occasionally and ten pounds frequently. (R.275). The examiner also reported that plaintiff can stand, walk, or sit six out of eight hours if she alternates sitting and standing. (R.275). Much like the previous assessment, climbing, balancing, stooping, kneeling, crouching, and crawling were limited to occasional performance. (R.276). Overhead reaching was also limited. (R.277). Plaintiff had no other limitations. (R.274-81).

In December 2001, Plaintiff Brooks began seeing Dr. Frank Jordan for her low back pain. (R.335). Dr. Jordan diagnosed her with degenerative disc disease of the lumbar spine with radiculitis and recommended she undergo a trial of lumbar epidural steroid injections. (R.336). Plaintiff agreed and noted that her back and leg were feeling better after a few treatments. (R.328). After a June 2002 MRI, Dr. Jordan diagnosed plaintiff with mild multilevel spondylosis, but observed that her lumbar vertebrae were normal in height, alignment, and signal intensity. (R.337).

Following the remand order by the Appeals Council, plaintiff visited Dr. Goodwin again, complaining of back pain and inability to sleep. (R.89). In July 2003, plaintiff received a consultative examination performed by Dr. Donita Keown. (R.68). Dr. Keown found some neck pain during manipulation of plaintiff's shoulders, but discovered no

scoliotic curvature or any evidence that suggested a herniated disc, nerve root impingement, or limitations due to a spinal lesion. (R.71). Plaintiff's straight-leg raise test was negative and her range of motion in the lumbar spine was excellent. (R.71). Moreover, plaintiff only had a mild reduction in range of motion and movements in her upper extremities without any evidence of motor strength loss or pathological reflexes. (R.71-72). Dr. Keown limited plaintiff to lifting twenty pounds occasionally, ten pounds frequently, and occasional balancing, kneeling, crouching, crawling, and stooping. (R.74-75). Plaintiff was given no other limitations in her activities. (R.74-75).

In September 2003, Dr. Robert Barnett conducted a consultative examination on the plaintiff. (R.94). An MRI of plaintiff's back revealed no herniated discs, but mild multilevel spondylosis was discovered in her lumbar spine. (R.94). Dr. Barnett diagnosed plaintiff with arthritis in her lower back, noting that the MRI showed arthrosis and mild disc dessication in some vertberae. (R.94). He concluded that she cannot do repetitive lifting, bending, stooping, long standing, or long sitting. (R.95). He also determined that plaintiff can lift twenty pounds occasionally, ten pounds frequently, and can walk, sit, or stand one out of eight hours. (R.96). Plaintiff was also limited to bending and reaching only occasionally with restricted use of her left upper extremity. (R.96).

Plaintiff's mental problems were first documented in a visit to Patricia Williams, M.A., a psychological examiner, and John B. Aday, Ed.D., a licensed clinical psychologist. (R.282). In June 2001, Ms. Williams and Dr. Aday reported that plaintiff

7

took Paxil for the "emotional part of not working" and that her depression had developed since her physical problems began. (R.283, 285). They further reported that plaintiff cries daily, has poor sleep and energy, and has difficulty concentrating. (R.285). During the visit, plaintiff's affect was broad and her mood was systhymic. (R.284). However, she had never received psychiatric treatment for her depression and was not suicidal or socially withdrawn. (R.283, 285). She was coherent in her thought process with no disorganization or loosening of associations. (R.284). Ms. Williams and Dr. Aday concluded that plaintiff had a depressive disorder but her memory was adequate for most pursuits and she had adequate social interactions, only mild impairment of concentration, and only mild problems adapting to social stressors. (R.283).

A month later, plaintiff received a mental residual functional capacity assessment from a state agency examiner. (R.300). The assessment found moderate limitations to plaintiff's abilities to understand and remember instructions, carry out detailed instructions, maintain concentration for extended periods, perform activities on schedule and maintain regular attendance, complete a workday or work week without interruptions from psychological symptoms and perform at a consistent pace without unreasonable rest, interact appropriately with the public, accept instructions and respond appropriately to criticism, and set realistic goals or make plans independently of others. (R.300-01). Plaintiff was given no mental limitations for the remaining twelve of the twenty total categories. (R.300-01). The assessment concluded that plaintiff can complete simple

8

tasks with persistence, will interact distantly with the public, will accept supportive criticism from supervisors, and will need assistance setting realistic goals. (R.302).

Following the remand order, plaintiff visited Robert Kennon, Ph.D., for a consultative psychological examination. (R.78). In August 2003, Dr. Kennon recorded that plaintiff had no history of mental health care and showed no significant impairments in her social functioning other than that she is slightly more withdrawn and not as socially active since her back and neck injuries. (R.79, 81). Plaintiff also had no mental impairments that would preclude her from managing her own funds. (R.81). Plaintiff told Dr. Kennon that she feels hopeless and admits having mild depressive features that have developed since she stopped working. (R.81). She also admitted to mild generalized nervousness. (R.82). However, plaintiff's stream of thought was reported as logical, clear, and coherent, and her thought process was adequately linear, flexible, and goal-oriented. (R.82). Dr. Kennon detected no signs of underlying anxiety features, no clear indication of significant depressive symptomatology, and no indication of bizarre ideations, unusual perceptual distortions, or difficulty in negotiating her environment. (R.84). Plaintiff's cognitive functioning was found to be in the low average to average range. (R.82-83). Dr. Kennon's diagnosis was that plaintiff had mild adjustment reaction with depressive and anxiety features. (R.84). He performed a mental residual functional capacity assessment and observed only a slight impairment in plaintiff's ability to

9

understand and remember detailed instructions. (R.86-87). Otherwise, the assessment contained no mental limitations. (R.86-87).

The record also shows that, as of August 2003, plaintiff was running errands, going to the grocery store, performing light housekeeping chores, dusting her house, folding clothes, washing dishes, cooking, cleaning her kitchen, driving without difficulty, reading, and attending church regularly. (R.80, 284). She smoked at least half a pack of cigarettes daily for over fifteen years. (R.79, 237, 252).

On March 8, 2004, plaintiff testified in an administrative hearing before ALJ Anthony Fava. (R.338). She claimed continual back and neck pain that prevents her from working. (R.343-45). She also testified to taking Paxil for depression that was caused by her physical problems. (R.346). She noted that she had not had any depression problems before she began having physical problems. (R.347). Plaintiff further testified that she is unable to lift more than twenty pounds and can only lift up to ten pounds frequently. (R.350-51).

On July 12, 2004, after considering the entire record, ALJ Fava determined that Plaintiff Brooks was not disabled. More specifically, the ALJ found that: (1) Plaintiff met the disability insured status requirements since her alleged disability onset date of May 15, 2000, and continues to meet those requirements through the date of this decision; (2) Plaintiff has not engaged in substantial gainful activity since May 15, 2000; (3) The medical evidence establishes that plaintiff has degenerative disc disease, meeting

the definition of "severe" under the Act, but that she has no impairments or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4; (4) Plaintiff's testimony regarding her pain, symptoms, and limitations is not fully credible; (5) Plaintiff has the residual functional capacity to perform the physical exertional and nonexertional requirements of light work[3] except for lifting more than twenty pounds occasionally and ten pounds frequently, standing, walking and/or sitting more than six hours out of an eight hour workday, and performing greater than occasional postural activities (20 C.F.R. § 404.1545); (6) Plaintiff is unable to perform her past relevant work as an industrial technician or tile maker; (7) Plaintiff, at forty-one years old, is defined as a younger individual under 20 C.F.R. § 404.1563; (8) Plaintiff has a high school education (20 C.F.R. § 404.1564); (9) Plaintiff does not have any work skills that are transferable to the functions of skilled or semiskilled work (20 C.F.R. § 404.1568); (10) Section 404.1569 of Regulations No. 4 and Rules 202.20 and 202.21, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled" based on plaintiff's exertional capacity for light unskilled work and her age, education, and work experience; (11) Plaintiff's additional nonexertional limitations do not significantly compromise plaintiff's capacity for a wide range of light unskilled work. Therefore, using the above-cited rule as a framework,

---

[3] Light work is defined as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday, and sitting intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects. 20 C.F.R. § 404.1567(b), 416.967(b); Social Security Ruling 83-10.

plaintiff is not disabled; and (12) Plaintiff was not under a "disability" as defined under 20 C.F.R. § 404.1520(f) at any time through the date of this decision. (R.23-24).

## Analysis

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A). The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. 42 U.S.C. §§ 423, 1382c; see Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). The claimant bears the ultimate burden of establishing an entitlement to benefits. Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993).

In determining disability, the Commissioner conducts a five-step sequential analysis, as set forth in 20 C.F.R. § 404.1520 and § 416.920:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
2. An individual who does not have a severe impairment will not be found to be disabled.
3. A finding of disability will be made without consideration of vocational factors if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment found in 20 C.F.R. Part 404, Subpart. P, Appendix 1.
4. An individual who can perform work that he or she has done in the past will not be found to be disabled.
5. If an individual cannot perform his or her past relevant work, other factors including age, education, past work experience, and residual

>functional capacity will be considered to determine if other work can be performed.

Further analysis is unnecessary if it is determined that an individual is not disabled at any point in this sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1989). In this case, analysis proceeded to step five, where the ALJ found that plaintiff is not disabled because she has the residual functional capacity to perform light unskilled work.

Plaintiff appeals on the grounds that the ALJ's decision denying plaintiff disability benefits is not supported by substantial evidence, and that the ALJ failed to properly follow the remand order from the Appeals Council, failed to include specific jobs the plaintiff is capable of performing, and improperly discredited certain pieces of medical evidence. The court will address each argument in the order given, first determining if substantial evidence supports the ALJ's findings.

Regarding plaintiff's physical impairments, the ALJ relied on the reports of Dr. Goodwin, Dr. Keown, and the state agency examiners in finding that plaintiff was capable of performing light work. (R.21). Dr. Goodwin, plaintiff's treating physician, reported consistent lumbar tenderness in plaintiff's lumbar region with limited flexion in her waist. (R.263-66). On two occasions, he limited plaintiff to lifting no more than twenty-five pounds. (R.263-64). Dr. Keown noted that plaintiff showed signs of some pain in her neck but found only a mild reduction in plaintiff's range of motion due to the pain. (R.71-72). While Dr. Keown found an excellent range of motion in plaintiff's

13

lumbar spine and no evidence of a herniated disc, scoliotic curvature, or nerve root impingement, she limited plaintiff to lifting twenty pounds occasionally, ten pounds frequently, and climbing, balancing, kneeling, crouching, crawling, and stooping only occasionally. (R.72, 74-75). These limitations are consistent with the physical residual functional capacity assessments performed by the state agency examiners. Both assessments found plaintiff capable of lifting twenty pounds occasionally, ten pounds frequently, and walking, sitting, or standing six out of eight hours, and had similar findings as Dr. Keown concerning plaintiff's ability to climb, balance, kneel, crouch, crawl, and stoop. (R. 244, 275). Viewing these reports with the medical evidence as a whole, the ALJ reasonably determined that plaintiff had a severe impairment which could produce some pain and discomfort, but that such pain was not debilitating, nor precluded her from performing light work. (R.21).

In determining plaintiff's mental impairments, the ALJ considered all of the psychological reports and found no severe mental impairment that imposes any more than minimal restrictions on plaintiff's ability to perform unskilled work. (R.20). The examination by Ms. Williams and Dr. Aday found plaintiff's memory suitable for most pursuits and only mild impairments to her ability to concentrate and adapt to social stressors. (R.285). Strangely, their assessment also gave a GAF score of 50, indicating serious impairment in social or occupational functioning. (R.285). However, the ALJ rejected this score completely since it is clearly inconsistent with their objective

observations and conclusions finding only a mild impairment. (R.18). A mental residual functional capacity assessment by a state agency examiner found moderate limitations in plaintiff's mental capacity, concluding that plaintiff would be able to complete simple tasks and sustain persistence in those tasks. (R.300-02). An assessment by Dr. Kennon observed that plaintiff showed no signs of underlying anxiety, no clear indication of significant depressive symptomatology, and no difficulty negotiating in her environment. (R.84). Dr. Kennon diagnosed plaintiff with mild adjustment reaction with mixed depressive and anxiety features, but only indicated slight impairment in plaintiff's ability to understand and remember instructions. (R.84, 86). Otherwise, she had no mental limitations. (R.86-87). Furthermore, plaintiff has never sought treatment for any mental disorders. (R.79, 283). Failure to seek treatment can be considered in determining non-disability unless the claimant is unable to afford treatment and his or her condition is in fact disabling. See McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990); Hale v. Sec'y of Health and Human Serv., 816 F.2d 1078, 1081-82 (6th Cir. 1987). Since plaintiff has failed to establish that her mental condition is in fact disabling or that she cannot afford mental treatment, her failure to seek mental treatment is a factor that the ALJ may consider in finding no disability. Therefore, based on the foregoing psychological evidence, the ALJ reasonably determined that plaintiff had no severe mental impairment.

For the foregoing reasons, the court finds that substantial evidence supports the ALJ's findings regarding plaintiff's physical and mental impairments. Thus, the ALJ was warranted in concluding that plaintiff was capable of performing unskilled light work.

Plaintiff asserts that the ALJ failed to follow the Appeal Council's remand order by failing to obtain vocational expert testimony. However, the remand order was primarily for the ALJ to properly evaluate the evidence of plaintiff's nonexertional limitations. (R.54-55). The requirement regarding the use of a vocational expert was conditional upon the existence of nonexertional limitations. (R.55). After reviewing the record and considering the new findings of Dr. Kennon, the ALJ determined that plaintiff does not have a severe mental impairment that imposes more than minimal limitations on her ability to perform unskilled light work. (R.20, 22). The ALJ also noted that stooping and bending are required only occasionally in light work and crouching is not required. (R.22). In addition, plaintiff's nonexertional limitations in climbing, balancing, kneeling, and crawling would not have a significant impact on her ability to perform light work. (R.22). Thus, the ALJ was not required to obtain vocational expert testimony since no significant nonexertional impairment was found.

Plaintiff also claims that the ALJ erred by not outlining specific unskilled light work the plaintiff can perform. However, the ALJ's use of the medical-vocational guidelines does not require him or her to designate specific jobs the plaintiff can perform. The SSA takes administrative notice of the work that exists in the national

16

economy at each functional level. See 20 C.F.R. § 404.1566(d); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(b).

Finally, plaintiff alleges that the ALJ failed to accord appropriate weight to Dr. Barnett's report and the assessment of a psychological consultant. The ALJ considered Dr. Barnett's report and rejected it because the report appeared to be based primarily on plaintiff's subjective complaints, not on Dr. Barnett's objective observations. (R.20). The ALJ also found that the physical limitations Dr. Barnett placed on the plaintiff's capacity were not supported by his objective observations and were inconsistent with the medical evidence as a whole. (R.20). A treating physician's opinion is given deference only when supported by objective medical evidence. See Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 477 (6th Cir. 2003). Even though Dr. Barnett was a treating physician, the ALJ was justified in giving his assessment little weight since it was not supported by objective medical evidence.

The psychological consultant who asserted that plaintiff had difficulties with social functioning, concentration, persistence, and pace was also properly discredited by the ALJ. ALJ Fava determined that this assessment was entitled to little weight since its conclusions were not supported by the balance of medical evidence. (R.20). In fact, the reports of Dr. Aday and Dr. Kennon show only slight or mild limitations in plaintiff's mental capacity. (R.86-87, 285). Therefore, the ALJ was warranted in granting the

psychological consultant's report little weight due to its inconsistency with the other psychological assessments.

## Conclusion

For the foregoing reasons, the decision of the Commissioner is AFFIRMED. The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

_James D. Todd_
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

_12 August 2005_
DATE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 12 in case 1:04-CV-01299 was distributed by fax, mail, or direct printing on August 15, 2005 to the parties listed.

---

Joe A. Dycus
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

A. Russell Larson
LAW OFFICES OF A. RUSSELL LARSON
P.O. Box 2163
Jackson, TN 38302--216

Honorable James Todd
US DISTRICT COURT